UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

DARRYL MARRANT,                           :

              Petitioner,                 :      REPORT AND RECOMMENDATION

         - against -                      :      09 Civ. 4964 (LTS)(MHD)

DENNIS BRESLIN, Superintendent of  :
Arthur Kill Correctional Facility,
and ANDREW CUOMO, Attorney General :
of New York,
                                          :
              Respondents.
-----------------------------------x

TO THE HONORABLE LAURA T. SWAIN, U.S.D.J:


    Petitioner Darryl Marrant, an inmate in the New York State

correctional system, seeks a writ of habeas corpus challenging his

2005 conviction in the Supreme Court of New York, New York County.

Petitioner was found guilty of Criminal Possession of a Controlled

Substance in the Third and Fifth Degrees. The trial court sentenced

him to concurrent prison terms of six years and two-and-one-half

years, to be followed by three years of post-release supervision.

(S. Tr. 9).[1] Petitioner is currently serving that sentence.


    In his petition filed on May 27, 2009, petitioner asserts one

_____

    [1] "S. Tr." refers to the transcript of petitioner's
sentencing hearing.

ground for relief, which can be separated into two component claims. First, he argues that the trial court's refusal to grant his newly-appointed counsel more than one-half day to prepare for trial deprived him of his rights to counsel, to present a defense, and to a fair trial. (Habeas Pet. at ¶ 12). Second, petitioner argues that his newly-appointed counsel's failure to impeach a witness with several prior inconsistent statements during cross-examination deprived him of his right to effective assistance of counsel. (Id.). Respondent concedes that the petition is timely and that petitioner's claims are exhausted, but contends that petitioner's claims are without merit. (Resp't's Mem. of Law in Opp'n to the Pet. for a Writ of Habeas Corpus, 12-14, 16). We agree.

PRIOR PROCEEDINGS

Petitioner's conviction stemmed from his participation on March 12, 2005 in what appeared to be a narcotics transaction. The transaction was observed by a New York City police officer, who, together with a police sergeant, restrained and handcuffed petitioner. Following petitioner's arrest, the officer found petitioner in possession of several envelopes containing cocaine.

As New York City Police Officer Edwin Moncado and Sergeant
Jose Roman testified at petitioner's trial, at midday on March 12,
2005 the officers were riding westbound on East 115th Street
between Lexington and Third Avenues in Manhattan in an unmarked
vehicle, when Officer Moncado observed petitioner standing on a
sidewalk facing a Hispanic man. (Tr. 27, 29, 34, 88).[2] Officer
Moncado saw petitioner hand a small object to the Hispanic man, and
although he testified at trial that he "couldn't make out what it
was", based on his training he believed that he had witnessed a
narcotics transaction. (Tr. 30). Officer Moncado then noticed that
Marrant "had something in his left pocket [of his coat] that
appeared to be weighing down his pocket", which Officer Moncado
believed might be a weapon. (Tr. 38, 39).

As petitioner turned and walked in front of the unmarked
vehicle, Officer Moncado told Sergeant Roman that the person
walking in front of the car had something in his pocket and asked
the sergeant to apprehend the man. (Tr. 38-39, 89). Officer Moncado
and Sergeant Roman exited their vehicle, approached petitioner, and
identified themselves as police officers. (Tr. 41, 89-90). Sergeant
Roman ordered petitioner not to place his hands in his pockets.
(Tr. 41, 91). Officer Moncado saw Marrant placing his hand in his

---

[2] "Tr." refers to the transcript of petitioner's trial.

left coat pocket, so he engaged in a brief struggle with Marrant to restrain his left arm, while Sergeant Roman restrained Marrant's right arm. (Tr. 42-43, 92). On cross-examination, Officer Moncado testified that he grabbed Marrant's left hand before it actually entered his coat pocket. (Tr. 54).

Once the officers had handcuffed petitioner, Officer Moncado recovered from Marrant's left hand a plastic bag with eleven wax envelopes containing cocaine. (Tr. 43, 92). Petitioner then asked Officer Moncado whether the officer was going to "put [him] through the system." (Tr. 44). Officer Moncado testified that when petitioner was later taken to the police station, he recovered cash totaling $252.00 from Marrant's right front pocket and a cellular phone, although Officer Moncado could not recall from where on Marrant's body the cellular phone was recovered. (Tr. 49-51, 77).

On March 17, 2005, a New York County grand jury indicted petitioner on charges of Criminal Possession of a Controlled Substance in the Third and Fifth Degrees. (Decl. of Asst. Atty. Gen. Lisa Fleischmann in Opp'n to Pet. for Writ of Habeas Corpus, dated Sept. 8, 2009, Ex. B at 2).

Petitioner filed a pre-trial motion to challenge the existence

of probable cause for his arrest, as well as to suppress his post-arrest statement to the police and the items recovered upon his arrest. The court (Hon. Arlene Silverman, S.C.J.) held a <u>Dunaway-Mapp</u>-<u>Huntley</u> hearing on May 19, 2005.[3] Officer Moncado testified for the State. Petitioner called no witnesses and did not testify.

During the hearing, Officer Moncado testified that after observing the suspected narcotics exchange involving petitioner, he noticed that the left-hand pocket of petitioner's jacket "looked like it was weighted down." (H. Tr. 15).[4] Moncado testified further that it appeared as if petitioner had "something heavy in his pocket." (H. Tr. 16). During his cross-examination of Officer Moncado, defense counsel elicited that on the day of petitioner's arrest, Moncado had written in his memo book that "[u]pon approach, A/O observed bulge on left side of coat". (H. Tr. 40-41). Although he admitted writing the note, Officer Moncado testified that he could not recall seeing a bulge in petitioner's jacket, describing the jacket instead as having appeared "weighted down." (<u>Id.</u>).

---

[3] Petitioner was not granted a hearing on his motion to suppress the drugs recovered from him because he did not admit possession of the drugs in light of his pending parole revocation hearing. Under New York law at the time, petitioner was required to admit possession of the drugs to have standing to seek their suppression. (Fleischmann Decl., Ex. A at 29, Ex. B at 6 n.4).

[4] "H. Tr." refers to the transcript of the pre-trial suppression hearing held in petitioner's case.

Based largely on this exchange, defense counsel argued that Moncado's testimony at the hearing was not credible. Specifically, he argued that there was no testimony about an object having been recovered from Marrant that could have weighed down Marrant's coat. (H. Tr. 56). He also contended that it was improbable that the officers would drive by just as the narcotics transaction took place, and that they would fail to apprehend the alleged purchaser of the narcotics. (H. Tr. 57, 59). Finally, he argued that it was improbable that Marrant would reach in his pocket and grab ahold of drugs after being instructed by the officers not to put his hands in his pockets. (H. Tr. 58-59). Defense counsel argued that in light of the officer's incredible testimony, there was no evidence to establish probable cause for Marrant's arrest, and Marrant's statement to the police and the items recovered from him should be suppressed as fruits of an illegal arrest. (H. Tr. 60).

The court denied petitioner's suppression motion in an oral decision on June 14, 2005. (D. Tr. 1-2).[5] The court determined that Officer Moncado had had probable cause to stop and search Marrant after seeing him exchange a small object for money in a location with significant drug activity, and noticing that the left-hand

_____

[5] "D. Tr." refers to the transcript of the judge's oral decision on petitioner's suppression motion.

pocket of his jacket appeared to be weighted down. (D. Tr. 4-5).
The court thus concluded that the money recovered from Marrant was
admissible at trial. (D. Tr. 5). It further determined that
Marrant's statement to the police was spontaneous, and therefore
admissible. (D. Tr. 5).

_____

_____Jury selection in Marrant's trial began on August 8, 2005 and
was completed the next morning, with the trial scheduled to begin
at 2:15 that afternoon before the Honorable Ruth Pickholz, S.C.J.
(V.D. Tr. 1, 92, 194).[6] Shortly after the conclusion of jury
selection, however, senior counsel for petitioner, Thomas Giovanni,
Esq., notified the court that he would be unable to proceed with
trial because of a family emergency. (P.I. Tr. 2).[7] Charles Hart,
Esq., junior counsel for petitioner, remained assigned to the case.
(Tr. 10-11). The court ordered that new senior counsel be appointed
for petitioner and that the parties go forward with trial, since a
jury had already been selected. (P.I. Tr. 2; Tr. 10-11). The trial
was postponed until 9:30 the next morning. (P.I. 7-8).

_____

[6] "V.D. Tr." refers to the transcript of the voir dire
proceeding to select a jury for petitioner's trial.

[7] "P.I. Tr." refers to the transcript of the preliminary
instructions delivered by the trial judge to the jury in
petitioner's case on August 9, 2005.

The trial resumed the next morning as ordered, with Wilfredo Santa Ana, Esq., having been appointed as petitioner's new senior counsel at approximately 2:30 the previous afternoon. (Tr. 10). Santa Ana noted as a preliminary remark to the trial judge that petitioner "objects to me going forward in place of Mr. Giovanni because of the short time frame in which I was given to prepare this case", and that petitioner

> is concerned that in the space of time between [Mr. Giovanni's emergency] and this morning, I was unable to adequately prepare his defense. I've explained to [petitioner] that Your Honor has ordered our office to go forward because since Mr. Giovanni can't be here and there is a jury already selected, that we are obligated to go forward based on your orders. Just for the record, I object to going forward. I will, of course, follow your orders, but I just want to make a very strong objection.

(Tr. 10-11). The trial judge reiterated her faith in Santa Ana's ability to represent petitioner and ordered the trial to proceed as scheduled. (Tr. 11). Specifically, the court referred to Santa Ana's trial experience, and stated that the junior attorney on the case, Mr. Hart, was throughly familiar with the case, had actively participated in voir dire, and, according to Giovanni, was going to question at least one witness during trial. (Id. See also Tr. 98). Santa Ana replied that "[j]ust for the record, I object on the constitutional grounds to preserve [petitioner's] right of

ineffective assistance of counsel, his due process [right] to a fair trial under the State and Federal Constitution." (Id.).

The trial proceeded with Santa Ana as senior counsel and Hart as junior counsel for petitioner. Hart presented the opening statement for petitioner, in which he argued that Marrant had been stopped and searched for no reason, and that the police officers who would testify were lying about the events leading up to Marrant's arrest. (Tr. 20). He stated that "we'll show that there are various inconsistencies, many inconsistencies in their collective statements and that they are lying." (Id.).

Officer Edwin Moncado and Sergeant Jose Roman testified for the State. Petitioner presented no witnesses, nor did he testify during the trial. The prosecution called Officer Moncado as its first witness, and Santa Ana cross examined him on petitioner's behalf. (Tr. 52). Hart declined to cross-examine the prosecution's second witness, Sergeant Roman. (Tr. 94).[8]

---

[8] In his summation, Santa Ana explained that the decision not to cross-examine Sergeant Roman was based on the fact that the sergeant did not corroborate Officer Moncado's observation of a suspected narcotics transaction, a Hispanic man being present, a bulge in petitioner's pocket, a struggle between Marrant and Officer Moncado, the recovery of a cell phone from Marrant, or drugs in Marrant's hands, and thus had "nothing to add" and "only showed that Officer Moncado cannot be trusted." (Tr. 138).

Following the conclusion of Sergeant Roman's testimony, Santa Ana stated that petitioner "wants me to renew his application that my office has been, quote-unquote, ineffective as a result of the short time frame in which I have been given to prepare his case." (Tr. 96). Santa Ana also noted that petitioner had identified an inconsistency between Officer Moncado's grand jury and trial testimony relating to whether petitioner had put his left hand inside his pocket after being apprehended by the officers, and suggested that Santa Ana would have addressed the inconsistency on cross-examination if he had been given more time to prepare. (Id.).[9] The court replied that Santa Ana "did a very competent job of cross examination. I think the record is clear on that. I don't think that's a big inconsistency. We're going to proceed, your record is made." (Tr. 98). Counsel then objected "under State and Federal constitutional grounds that [petitioner] was not given effective assistance of counsel, given the short time in which we were ordered to go forward with the trial in light of Mr. Giovanni's family emergency." (Id.). The court rejected counsel's objection, stating that "the record speaks for itself as for [Santa Ana's] aggressive, exhaustive, meticulous cross examination." (Tr.

---

[9] Santa Ana indicated, in response to a question from the judge, that he had read the transcripts of the grand jury proceeding and suppression hearing as well as the transcript of petitioner's parole hearing and "mountains of other evidence" in preparation for petitioner's trial. (Tr. 98).

98-99). Petitioner's subsequent request to personally address the court was denied because the court stated that he had "gotten a very good and fair trial." (Tr. 99).

Shortly thereafter, Santa Ana remarked that Mr. Hart, petitioner's junior counsel, had "never tried a felony case before. In fact, never tried a case while employed by our office. He is a recently newly admitted attorney, recent law graduate, and I was asked to -- rather, ordered to appear to take over this case in light of Mr. Giovanni's family emergency." (Tr. 99-100). At this point, the court held an off-the-record discussion with counsel. (Tr. 100). The court then decided to "allow the defense to question [Officer Moncado] on the issue that was raised by [petitioner] as to the hand in the pocket." (Tr. 100). However, Santa Ana agreed to forgo calling Officer Moncado back to the stand provided that the court admit grand jury minutes consisting in part of the following statements made by Moncado: "I observed [petitioner] hand over a small object white in color . . . I then noticed that [petitioner's] jacket was weighted down on his left side . . . I got out of the police car with my supervisor. My supervisor then approached him and I observed [petitioner] then go into his left-hand pocket." (Tr. 102, 105). The judge read this testimony into

the record. (Tr. 105).[10]

Prior to delivering his summation, Santa Ana relayed to the court petitioner's concern that he had been "railroaded" as a result of counsel's short time for preparation, stating that "I make my objection, I ask the Court to consider . . . [declaring] a mistrial. [Petitioner] claimed that he was not given effective assistance of counsel pursuant to both State and Federal constitutional laws." (Tr. 112). The court declined to declare a mistrial, stating that "I think the record showed that you were aggressive, articulate, meticulous, exhaustive in your cross examination." (Id.)

On August 11, 2005, the jury reached a unanimous verdict, finding petitioner guilty of Criminal Possession of a Controlled Substance in the Third and Fifth Degrees. (V. Tr. 6-7).[11] On September 21, 2005, the trial judge, after hearing from both sides,

---

[10] We note that to the extent that petitioner now argues that a portion of this grand jury testimony should have been deemed inadmissible because it was consistent with Officer Moncado's trial testimony, apparently the entire question and answer from the officer's grand jury testimony was read into the record at petitioner's urging. (See Pet'r's Mem. at 38; Resp't's Mem. at 34 n.10, Tr. 102).

[11] "V. Tr." refers to the transcript of the jury delivering its verdict in petitioner's case.

sentenced petitioner to concurrent sentences of six years in prison on the first count and two-and-a-half years in prison on the second count, to be followed by a post-release supervision period of three years. (S. Tr. 9).

Petitioner filed a timely appeal to the Appellate Division, First Department. On November 17, 2005, the court "granted appellant permission to appeal as a poor person on the original record" and assigned petitioner new counsel. (Fleischmann Decl., Ex. A at 1). In his brief to the Appellate Division, petitioner raised two claims. First, he argued that Officer Moncado's testimony during the pre-trial suppression hearing was too inconsistent and incredible to establish the legality of the police conduct, and thus that the trial court should have determined that there was no probable cause to arrest Marrant and suppressed Marrant's statement to the police and the items recovered from him. (Id., Ex. A at 22-29). Second, petitioner argued that the court's refusal to allow Santa Ana more than one-half day to prepare for trial had deprived petitioner of his rights to counsel, to the effective assistance of counsel, to present a defense, and to a fair trial. (Id., Ex. A at 31-40).

On November 20, 2007, the Appellate Division unanimously

affirmed Marrant's conviction. <u>People v. Marrant</u>, 45 A.D.3d 410, 845 N.Y.S.2d 323 (1st Dep't 2007). As to petitioner's first argument, the court determined that the motion to suppress had been properly denied, because "[t]here is no basis for disturbing the court's credibility determinations, which are supported by the record", and Officer Moncado's observations created probable cause for Marrant's arrest. <u>Id.</u> at 411, 845 N.Y.S.2d at 324.[12] As to the second argument, the court held that the trial court had "properly exercised its discretion in denying [petitioner's] newly substituted lead counsel's request for additional preparation time, as well as his subsequent motion for a mistrial, and these rulings did not deprive [petitioner] of a fair trial or effective assistance of counsel." <u>Id.</u> In support of its decision, the Appellate Division cited "the simplicity of the evidence and the involvement of the junior attorney, who was throughly familiar with the case." <u>Id.</u> It also noted that Marrant was not prejudiced by the "belated" presentation to the jury of "a particular inconsistency involving grand jury minutes." <u>Id.</u>

        Pursuant to New York Criminal Procedure Law section 460.20, petitioner sought leave to appeal the Appellate Division's decision

---

[12] We note that petitioner has not pressed this claim as a basis for habeas relief.

to the New York Court of Appeals on December 17, 2007. (Fleischmann Decl., Ex. D). The Court of Appeals denied petitioner's application on February 29, 2008. People v. Marrant, 10 N.Y.3d 767, 854 N.Y.S.2d 329 (2008).

Having been rebuffed by the state courts, on May 27, 2009 Marrant's appellate counsel filed this petition for a writ of habeas corpus on Marrant's behalf. The petition sets forth, in substance, two claims. First, petitioner argues that the trial court's refusal to grant a longer adjournment or declare a mistrial after the substitution of newly-appointed counsel deprived him of his constitutional rights to present a defense, to due process, and to the assistance of counsel. (Pet'r's Mem. of Law in Supp. of Habeas Pet. at 21-22). Second, he argues that his newly-appointed counsel's failure to impeach Officer Moncado with the officer's prior inconsistent statements deprived him of his right to effective assistance of counsel. (Id.)

ANALYSIS

A. Standard of Review

        The stringency of federal habeas review turns on whether the

15

state courts have passed on the merits of the petitioner's claim --
that is, whether the decision of the highest state court to
consider the claim is "based on the substance of the claim
advanced, rather than on a procedural, or other, ground." <u>Sellan v.
Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. §
2254(d)). If the state court has addressed the merits, the
petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal Law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). <u>See</u>, <u>e.g.</u>, <u>Bell v. Cone</u>, 535 U.S. 685, 693-94
(2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000); <u>Howard v.
Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Brown v. Artuz</u>, 283
F.3d 492, 497-98 (2d Cir. 2002).


"Clearly established federal law" "refers to the holdings, as
opposed to the dicta, of the Supreme Court's decisions as of the
time of the relevant state-court decision." <u>Howard</u>, 406 F.3d at 122
(quoting <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002)). "[A]
decision is 'contrary to' clearly established federal law 'if the

state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Id. (quoting Williams, 529 U.S. at 413).

What constitutes an "unreasonable application" of settled law is a somewhat murkier proposition. "A federal court may not grant habeas simply because, in its independent judgment, the 'relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Id. (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "[s]ome increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v.

<u>Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)). <u>Accord</u>, <u>Richard S. v.</u> <u>Carpinello</u>, 589 F.3d 75, 80 (2d Cir. 2009).

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Richard S.</u>, 589 F.3d at 80-81; <u>McKinney v. Artuz</u>, 326 F.3d 87, 101 (2d Cir. 2003). <u>See</u> <u>generally</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338-39 (2006).

B. <u>Petitioner's Claims</u>

_____The Appellate Division adjudicated Marrant's claims on their merits, rather than on procedural or other grounds. <u>See</u> <u>Marrant</u>, 45 A.D.3d at 410, 411, 845 N.Y.S.2d at 323, 324 (holding that trial court's denial of Marrant's newly-substituted counsel's requests for additional preparation time or for a mistrial did not deprive Marrant of a fair trial or effective assistance of counsel). Thus, petitioner cannot obtain habeas relief absent a showing that the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

1. Trial Court's Refusal to Grant a Longer Adjournment

Petitioner argues that "the state court's refusal to grant a longer adjournment after the substitution of new counsel or to declare a mistrial deprived petitioner of his constitutional rights to present a defense, to due process, and to the assistance of counsel[.]" (Pet'r's Mem. at 21, 31). This argument is without merit.

A trial judge's refusal to grant a continuance for new counsel to prepare a case can raise due-process concerns. See Ungar v. Sarafite, 376 U.S. 575, 588-89 (1964). Similarly, the Supreme Court has stated that "[t]he Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment", and may indeed be violated if appointed counsel lacks the opportunity "to confer, to consult with the accused and to prepare his defense." Avery v. Alabama, 308 U.S. 444, 446 (1940). However, the Court has also noted that "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth

Amendment right to counsel." Morris v. Slappy, 461 U.S. 1, 11
(1983); see also Chambers v. Maroney, 399 U.S. 42, 53-54 (1970)
("[W]e are not disposed to fashion a per se rule requiring reversal
of every conviction following tardy appointment of counsel."). The
factors that a judge should consider when evaluating a request for
a continuance include

> (1) the length of the requested delay; (2) whether other
> continuances have been requested and granted; (3) the
> balanced convenience or inconvenience to the litigants,
> witnesses, counsel, and the court; (4) whether the
> requested delay is for legitimate reasons, or whether it
> is dilatory, purposeful, or contrived, whether the
> defendant contributed to the circumstance which gives
> rise to the request for a continuance; (5) whether the
> defendant has other competent counsel prepared to try the
> case, including the consideration of whether other
> counsel was retained as lead or associate counsel; (6)
> whether denying the continuance will result in
> identifiable prejudice to the defendant's case, and if
> so, whether the prejudice is of a material or substantial
> nature; (7) the complexity of the case; and (8) other
> relevant factors which may appear in the context of any
> particular case.

Childs v. Herbert, 146 F. Supp. 2d 317, 323 (S.D.N.Y. 2001)
(quoting United States v. Burton, 584 F.2d 485, 490 (D.C. Cir.
1978)).

"When a denial of a continuance forms the basis for a habeas
claim, the petitioner must show not only that the trial court

abused its discretion, but also that the denial was so arbitrary and fundamentally unfair that it violated constitutional principles of due process." Childs, 146 F. Supp. 2d at 322 (citing, inter alia, Ungar, 376 U.S. at 589; United States v. Ellenbogen, 365 F.2d 982, 986 (2d Cir. 1966)). To establish a violation of his due-process or Sixth Amendment rights, the petitioner must show that the court exhibited "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'". Morris, 461 U.S. at 11-12 (quoting Ungar, 376 U.S. at 589); accord, Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003). The decision to deny a request for a continuance must be evaluated in the particular circumstances of a given case, especially taking into account the reasons provided to the trial judge at the time the continuance was denied. Ungar, 376 U.S. at 589-90 (citing, inter alia, Nilva v. United States, 352 U.S. 385, 395 (1957)); Ellenbogen, 365 F.2d at 986 (noting that there is "no mechanical test" for determining when the denial of a continuance constitutes an abuse of discretion). Moreover, a key element in assessing that issue is whether the challenged ruling adversely affected the defendant's ability to mount a defense. See, e.g., Morris, 461 U.S. at 14 (referring to "prejudicial error" in assessing claim of denial of right to counsel); Ungar, 376 U.S. at 589-90 & n.9 (summarizing due-process standards and finding no prejudice);

Nilva, 352 U.S. at 395 n.10.


Based on the factors for evaluating continuance requests, the
judge's refusal to grant an additional continuance in Marrant's
case was not unreasonable or arbitrary. The judge granted newly-
appointed counsel a one-half day adjournment to prepare for trial,
and in that time he apparently reviewed all pertinent transcripts
and other evidence. (Tr. 98). She also considered the inconvenience
to the court and jury of granting an additional continuance in the
matter, given that a jury already had been selected.[13] Moreover, the
judge based her decision to deny an additional continuance in part
on the presence of petitioner's junior counsel, who was very
familiar with and had been actively involved in the case and was
anticipated to examine at least one witness during the trial. (Tr.
10-11).[14] Furthermore, there was no indication that the judge's
refusal to grant an additional continuance would prejudice Marrant,

---

[13] Contrary to petitioner's suggestion, the fact that the
record does not indicate that the judge spoke with jurors about
their potential conflicts does not prove otherwise. (Pet'r's Mem.
at 25).

[14] Respondent correctly notes that "the decision to adjourn
the trial for a half day was apparently made off the record."
(Resp't's Mem. at 24). Although our review is restricted to
matters stated in the record, the trial judge's subsequent
instructions to the jurors and discussions with petitioner's
substitute counsel express at least some of the judge's reasoning
for limiting the duration of the continuance granted. (See Tr. 2,
10-11, 97-99).

such as by preventing him from calling certain witnesses or from introducing certain evidence. Finally, the case was a relatively simple one, involving the testimony of only two witnesses, both for the State, who described a brief encounter with Marrant. Although there is no indication that an unduly long adjournment was sought[15] or that Marrant sought an additional continuance for an improper purpose, the balance of factors suggests that the judge reasonably denied the request for an additional continuance in petitioner's trial.

Even if we were to conclude that the judge had improperly exercised her discretion in denying petitioner's request for an additional continuance, Marrant would need to demonstrate that he was prejudiced by that decision in order to obtain relief. Sixth Amendment violations only require per se reversal, as opposed to triggering harmless-error analysis, if they "amount to an '[a]ctual or constructive denial of the assistance of counsel altogether,' or when counsel was 'prevented from assisting the accused during a critical stage of the proceeding.'" Lainfiesta v. Artuz, 253 F.3d

---

[15] We note that the record does not indicate the length of the additional continuance that petitioner sought. Petitioner's counsel suggests, but does not state, that an additional adjournment of "another half day or day" was requested. (See Pet'r's Mem. at 24).

151, 157 (2d Cir. 2001) (internal citations omitted) (quoting Penson v. Ohio, 488 U.S. 75, 88 (1988); United States v. Cronic, 466 U.S. 648, 659 & n.25 (1984)). Similarly, Fourteenth Amendment due-process claims are generally subject to harmless-error analysis. See Arizona v. Fulminante, 499 U.S. 279, 306-07 (1991) ("[M]ost constitutional errors can be harmless."). See generally United States v. Gonzalez-Lopez, 548 U.S. 140, 148-49 (2006) (describing "trial errors" that trigger harmless-error review and "structural defects" that do not). The improper rejection of a request for a continuance in light of the late appointment of counsel would not constitute a structural error, and hence require habeas relief, without engaging in harmless-error analysis. See Morris, 461 U.S. at 12 (noting that denial of continuance request did not prevent newly-appointed counsel from being fully prepared for trial and that counsel obtained a "hung jury" on defendant's more serious charges). Cf. Gonzalez-Lopez, 548 U.S. at 150-52 (classifying erroneous deprivation of the right to counsel of choice as structural error, but noting that the right does not attach when counsel is appointed and that the right must be balanced against the demands of court's calendar).

Under harmless-error analysis, the petitioner bears the burden of demonstrating that the error "'had substantial and injurious

effect or influence in determining the jury's verdict.'" <u>Brecht v.</u>
<u>Abrahamson</u>, 507 U.S. 619, 623, 637-39 (1993) (quoting <u>Kotteakos v.</u>
<u>United States</u>, 328 U.S. 750, 776 (1946)). <u>See</u> <u>Fry v. Pliler</u>, 551
U.S. 112, 116-22 (2007); <u>accord</u>, <u>Lainfiesta</u>, 253 F.3d at 158.
Otherwise stated, he must show that the error resulted in "actual
prejudice." <u>Brecht</u>, 507 U.S. at 637 (citing <u>United States v. Lane</u>,
474 U.S. 438, 449 (1986)).

Marrant cannot demonstrate that he was prejudiced by the
judge's denial of his request for an additional continuance. As
discussed more fully in connection with his ineffective-assistance
claim below, Marrant has not identified any error by his substitute
lead counsel that influenced the jury's verdict. The judge's
refusal to grant an additional continuance did not prevent Santa
Ana from adequately preparing or presenting Marrant's defense.
Santa Ana engaged in a thorough cross-examination of the
prosecution's primary witness. (<u>See</u> Tr. 99, 112). He also offered
a lengthy summation in which he attacked the credibility of the
prosecution witnesses in several respects. (Tr. 113-39). Therefore,
there is no indication that the lack of additional preparation time
substantially influenced the jury's verdict.

Based on this analysis, we cannot conclude that the Appellate

Division's rejection of Marrant's claim was contrary to, or an unreasonable application of, clearly established federal law. Indeed, the Supreme Court has refused to grant relief to defendants who have been denied continuances for the late appointment of counsel in cases involving more serious charges and in arguably more pressing circumstances. See Avery, 308 U.S. at 450 (counsel appointed in capital case with only three days to prepare for trial); Morris, 461 U.S. at 12 (sole counsel given six days to prepare for trial on robbery, burglary, false imprisonment and rape charges); Chambers, 399 U.S. at 53-54 (new counsel only met with defendant for "a few minutes" before robbery trial). Thus, Marrant cannot obtain the habeas relief that he seeks on this basis.

## 2. Counsel's Impeachment of Officer Moncado

Petitioner also argues that Santa Ana's failure to impeach Officer Moncado with certain statements that the officer made during pre-trial hearings deprived him of his federal constitutional right to effective assistance of counsel. (Pet'r's Mem. at 34-35). This argument is meritless.

To demonstrate a violation of the constitutional right to the effective assistance of counsel, a petitioner must show that his

lawyer's performance was "so defective that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). As summarized in Brown:

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 79-80 (quoting Strickland, 466 U.S. at 690, 694); accord, e.g., Smith v. Spisak, Jr., __ S. Ct. __, 2010 WL 86341, * 7 (Jan. 12, 2010); Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009); Henry v. Poole, 409 F.3d 48, 62-64 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004).

It bears emphasis that the Strickland standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, a habeas court weighing an ineffective-assistance claim "must judge

the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and must "determine whether, in light of all the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord, e.g., Kimmelman v. Morrison, 477 U.S. 365, 386 (1986); Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted, the petitioner must demonstrate "a reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Strickland, 466 U.S. at 694).

We do not view the Appellate Division's determination that the petitioner's ineffective-assistance claim did not meet this high bar to be contrary to, or an unreasonable application of, clearly

established federal law.

In terms of the performance prong, Santa Ana's cross-examination of Officer Moncado was properly described by the trial judge as "aggressive, exhaustive, [and] meticulous." (Tr. 99. <u>See also</u> Tr. 112). Through his questioning, Santa Ana called Officer Moncado's credibility into question in numerous respects, including raising doubts as to whether Officer Moncado could accurately describe the coat that petitioner wore at the time of arrest, noting that it was Officer Moncado's first time testifying at trial despite having participated in over one thousand career arrests, questioning whether Officer Moncado had been trained to engage in deceitful behavior when pursuing drug-dealers, highlighting that Officer Moncado had to make many arrests to get assigned to the New York City Police Department's Anti-Crime Unit, and suggesting that Officer Moncado would face repercussions for admitting that he had made a mistake in stopping petitioner. (Tr. 56-70).

Moreover, during his cross-examination Santa Ana highlighted numerous inconsistencies between Officer Moncado's testimony at trial and the documentary record of Marrant's arrest. For example, Santa Ana pointed out that although Moncado had testified to struggling with petitioner during the arrest, this aspect of the

incident had never been documented. (Tr. 73-74). Similarly, in Officer Moncado's paperwork he had never described the Hispanic man whom he had seen standing with Marrant. (Tr. 75). Santa Ana also brought out the fact that although Officer Moncado testified that he had recovered a cellular phone from petitioner, he never vouchered the phone as evidence recovered in the case. (Tr. 76-77). Moreover, he demonstrated that Officer Moncado had written in his memo book that petitioner had had a bulge in his pocket, although at trial the officer testified that he could not remember whether a bulge existed. (Tr. 79-80). At the end of the cross-examination, Santa Ana used these credibility concerns and inconsistencies to argue that Moncado had planted the drugs on petitioner in order to protect his career. (Tr. 81-82).

At the conclusion of the prosecution's case, Santa Ana also successfully argued for the introduction of a portion of Officer Moncado's grand-jury testimony that was inconsistent with his testimony at trial in certain respects. (Tr. 96, 102-05). Specifically, in his grand-jury testimony Officer Moncado had stated that he saw petitioner and another man exchange a small white object for cash, whereas at trial the officer stated that he could not make out the object that the men had exchanged. (Tr. 101-02. See also Pet'r's Mem. at 38). Additionally, in his grand-jury

30

testimony Officer Moncado had said that petitioner had reached into his left pocket before the officer restrained him, and he initially confirmed that testimony at trial by stating that Marrant made a "furtive movement towards his pocket" when he was apprehended, which the officer clarified to mean that Marrant "was placing his hand in his pocket." (Tr. 42, 96, 102-03). However, on cross-examination the officer testified that he had grabbed Marrant's hand before the defendant could reach into his pocket. (Tr. 54. <u>See also</u> Pet'r's Mem. at 38).

Finally, in summation Santa Ana raised the issues of Officer Moncado's credibility and the inconsistencies in the officer's testimony during his summation. He argued that Officer Moncado had fabricated his account of Marrant's arrest to cover up his improper search and arrest of petitioner. (Tr. 115-30, 134-39). He also referenced his co-counsel's argument during his opening statement that there were inconsistencies in the officers' testimony, and referred specifically to Officer Moncado's testimony regarding the bulge in petitioner's pocket, the absence of a weapon recovered from Marrant, the officers' failure to apprehend the alleged narcotics purchaser, and Officer Moncado's failure to voucher the

cellular phone that had been recovered from Marrant. (Tr. 130-31).[16] Santa Ana also renewed his argument that Officer Moncado had planted the drugs on Marrant. (Tr. 132-33).

Petitioner contends that Santa Ana could have introduced other inconsistencies between Officer Moncado's testimony at petitioner's parole revocation hearing and the suppression hearing and the officer's testimony at trial. Specifically, petitioner mentions discrepancies between Officer Moncado's testimony in these fora regarding whether he had stopped his car prior to observing the narcotics transaction and the point at which he had noticed that petitioner's jacket pocket was weighted down. (Pet'r's Mem. at 28-29). Petitioner also highlights inconsistencies between Officer Moncado's testimony at the hearings and at trial regarding the order in which the officer had handcuffed petitioner and recovered his drugs, which petitioner argues could go to the question of whether Marrant's drugs were in plain view, and ultimately could undermine the officer's credibility. (Pet'r's Mem. at 30; Pet'r's

_____

[16] In light of Santa Ana's explicit reference to Hart's contention in the defense's opening statement that defense counsel would introduce several inconsistencies in the officers' testimony and his recitation of several such inconsistencies in the record during his summation, we reject petitioner's suggestion that defense counsel failed to fulfill the expectations created by their opening statement. (Pet'r's Mem. at 32-33).

Reply Mem. of Law in Supp. of Pet. for a Writ of Habeas Corpus, 7).

An attorney's decision about the extent and manner of his cross-examination of a witness typically is considered a strategic or tactical one, and will not support an ineffective-assistance claim unless there is a complete absence of "strategic or tactical justification for the course taken". United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (citing United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)). The failure to impeach a testifying witness with his or her prior inconsistent statements, however, can in "rare cases" satisfy the performance prong of the Strickland standard, especially when the omitted testimony would not pose a collateral risk to the defense, such as opening the door to the admission of other damaging testimony. Harris v. Artuz, 100 F. App'x 56, 57-58 (2d Cir. 2004); accord, Harris v. Senkowski, 298 F. Supp. 2d 320, 337-39 (E.D.N.Y. 2004) (citing cases).

Santa Ana's failure to introduce the inconsistent statements cited by plaintiff was not a violation of the performance prong of the ineffective-assistance standard. Santa Ana highlighted a number of clear inconsistencies between Officer Moncado's trial testimony and the documentary record of Marrant's arrest during his cross-

examination of the officer. He also set forth an elaborate argument challenging the officer's credibility based on the officer's concern for his job security and professional advancement. While counsel arguably could have made greater use of the tension between Officer Moncado's testimony at the hearings and at trial, the items cited by Marrant do not reflect the degree of conflict or inconsistency reflected by those used by counsel and they involved less significant facts. In any event, Santa Ana's decision to impeach the officer with only those statements that he invoked in cross-examination, in addition to his other methods of impeachment, does not satisfy the high bar set for establishing a violation of the performance prong under Strickland. See Lavayen v. Duncan, 311 F. App'x 468, 471 (2d Cir. 2009) (failure to pursue cross-examination on relatively small inconsistencies in eyewitness's prior statements in light of other impeachment during cross-examination did not establish constitutional error); Lynn v. Bliden, 443 F.3d 238, 250-51 (2d Cir. 2006) (failure to cross-examine witness about prior inconsistent statement did not satisfy performance prong of ineffective-assistance standard in light of other cross-examination attacking witness's credibility); Love v. McCray, 165 F. App'x 48, 50 (2d Cir. 2006) (failure to introduce police composite sketch to demonstrate inconsistency between witness's description and defendant's appearance did not satisfy

performance prong when counsel also cross-examined witness on inconsistency).

Furthermore, even if petitioner could satisfy the performance prong of the ineffective-assistance standard, he cannot demonstrate prejudice from counsel's alleged omission in light of the totality of the record. Santa Ana selected the most salient inconsistencies between the officer's trial testimony and the documentary record of Marrant's arrest, argued repeatedly to the jurors that they could not trust Officer Moncado's testimony, and suggested that the officer was lying to cover up his own improper actions. The jury apparently rejected this defense theory, but the omission of the less compelling impeachment evidence proffered by petitioner is not enough to undermine confidence in the jury's verdict. See Love, 165 F. App'x at 50 (distinguishing cases in which counsel totally failed to cross-examine witnesses regarding prior inconsistent statements from situation in which counsel neglected to introduce cumulative impeachment). Although eliciting more inconsistencies between Officer Moncado's prior statements and his testimony at trial might have given the jury additional reasons to distrust the officer, we cannot conclude that Santa Ana's failure to introduce this testimony calls the jury's verdict into question, particularly in light of counsel's sustained attack on Officer Moncado's

credibility in his cross-examination and summation.

Finally, even if we were inclined to judge counsel's tactical decisions more harshly, the result would not differ. Given the very forgiving standard of Supreme Court jurisprudence on these types of Sixth Amendment claims, we cannot view the Appellate Division's rejection of petitioner's ineffective-assistance claim as contrary to, or an unreasonable application of, the deferential Strickland standard. Therefore, petitioner's ineffective-assistance claim cannot sustain his request for habeas relief.

## CONCLUSION

For the reasons stated, we recommend that the writ be denied and the petition dismissed. As Marrant has failed to make a substantial showing of the denial of a constitutional right, we also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253(c).

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Fed. R. Civ. P. 72(b)(2) (2009); see also Fed. R. Civ. P. 6(a), 6(d); 28 U.S.C.

§

§ 636(b)(1). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Laura T. Swain, Room 755, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'q denied, 474 U.S. 1111 (1986).

Dated: New York, New York
       January 22, 2010

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been mailed today to:

Nancy E. Little, Esq.
Legal Aid Society
199 Water Street, 5th floor
New York, NY 10038

Lisa Fleischmann, Esq.
Assistant Attorney General
 for the State of New York
120 Broadway
New York, NY 10271-0332

37